(C. D. 1399)

PERKINS-GOODWIN Co. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 18, 1952)

*Townley, Updike & Carter (John G. McQuaid* of counsel) for the plaintiff.
*Charles J. Wagner,* Acting Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

JOHNSON, Judge: The merchandise in question, invoiced as "Unbleached Mixed Pulp (Sulphite 50%—Groundwood 50%)," was assessed for duty by the collector at the rate of 20 per centum ad valorem, under paragraph 1558 of the Tariff Act of 1930. The plaintiff claims, that the merchandise is free of duty under paragraph 1716 or paragraph 1750.

At the trial it was orally stipulated and agreed between counsel for both sides as follows:

MR. McQUAID: * * *

\* \* \* \* \* \* \*

The merchandise was imported in the form of sheets, and is a mixture composed of 50 percent chemical wood pulp, that is, unbleached sulphite fibers, and 50 percent mechanically ground wood pulp.

The merchandise was manufactured on machines used for the manufacture of wood pulp. During a trial run of new drying machinery sheets of mechanical pulp broke off as they passed through the driers. In view of this difficulty the sheets were strengthened by mixing chemical pulp with mechanical pulp at the pre-drying stage. This was accomplished by the opening of a valve to infuse the chemical pulp mash into the mechanical pulp mash. The resulting product was the merchandise in question.

I understand that the foregoing stipulation is agreeable to the Government's attorney.

MR. VITALE: The Government so agrees, your Honor, please, to those facts.

MR. McQUAID: I understand further that he will offer in evidence a chemist's report of this importation. In addition——

MR. VITALE: The Government will consent that the Government chemist's report, laboratory report number E 8453, dated June 26, 1947, New York, be admitted into evidence, having the same force and effect as if the chemist had testified in person.

JUDGE CLINE: It hasn't been offered, Mr. Vitale; he just said he thought you would. Are you offering it?

MR. McQUAID: It was my understanding that counsel for Government would offer it.

MR. VITALE: I think this would be the proper time to do it, your Honor, please, in that we have already agreed to certain facts, and I think this supports those facts that have been agreed to.

The report was admitted in evidence as exhibit 1. Also, the official Government sample was admitted in evidence as exhibit 2. An illustrative sample of wood pulp, which was wholly chemical, was admitted in evidence as exhibit 3, and a sample of wood pulp, illustrating that which was wholly mechanical, was admitted in evidence as exhibit 4.

Gerard Larocque, a chemical engineer, testified on behalf of the plaintiff that wholly mechanical wood pulp is one of the raw materials used as a component of practically all the cheaper papers and paperboards, but that it is not a material that can be used by itself in the making of papers, having to be mixed in varying proportions with chemical wood pulp. As an example, the witness stated that a mixture of 70 parts of the chemical wood pulp and 30 parts of the mechanical wood pulp is used in making some papers. Other mixtures vary in proportion, as the quality increases, until there is no mechanical wood pulp used, it being entirely chemical. The witness also stated that the imported merchandise, which was composed of a 50–50 mixture of the two, would be more difficult to use than wood pulp, which was wholly mechanical or wholly chemical, for the reason that there would have to be a recalculation and an adjustment of the proportions.

The witness also testified that wood pulp, whether it is wholly chemical or wholly mechanical, is used chiefly as paper stock. He described wood pulp as consisting of fibers of wood and nothing else. That is to say, the product, whether wholly chemical or wholly mechanical, is solely vegetable fibers, the same being the ultimate particle which constitutes the sheet of paper. His definition of fiber, from the paper-making viewpoint, is a small cell that can be seen with the naked eye, like a short hair, coming either from wood, or from rags, or from grasses. The witness also stated that there was little doubt in his mind that in 1930 the term "paper stock" meant fiber stock suitable for the manufacture of paper.

John J. McDonald, assistant sales manager of the pulp division of Brown Co., manufacturer of pulp and paper, and a chemist dealing with chemical wood pulp, testified on behalf of the Government that wood-pulp fibers chemically produced were longer than the wood-pulp fibers mechanically produced. The witness stated that from his experience in paper stock, the wood pulp in question would not be considered throughout the trade in the United States as paper stock. He considered that the term "paper stock" included all old papers of

all kinds; that paper stock meant old papers; that rags would be rag stock; and that old gunny sacks would be rope fiber. In the opinion of this witness, old gunny cloth, waste rope, and waste bagging would not be considered paper stock, nor would that term include grasses of any type. The witness was of the opinion, however, that the term "fibers," in its common meaning, would apply to wood pulp and the mixture in question, because wood pulp basically is fibers, wood pulp being a term used for a collection of fibers of one type or another.

Donald A. Fraser, in business of selling wood pulp for the Soundview Pulp Co., with 28 years' experience, testified on behalf of the Government that he was familiar with the production of wood pulp. In his opinion, the term "paper stock" at or prior to June 17, 1930, in the trade and commerce of the United States, covered old papers and not wood pulp, but he admitted that the term "fibers," as such, could include mechanically ground and chemically ground wood pulp, although ground wood pulp was referred to in the purchase and sale thereof as ground wood and never as fibers, and chemical wood pulp was generally referred to as unbleached sulphite, or bleached sulphite, or bleached sulphate.

The witness also testified that waste rope is not paper stock; that waste bagging is not paper stock; and that burlap bagging or gunny bags are not paper stock. The witness was also of the opinion that in the ordinary meaning of the term "fibers," wholly chemical wood pulp would not consist solely of fibers "unless you get technical about it." The witness clarified his statement by testifying that wholly chemical wood pulp, besides the fibers, includes a certain amount of lignin left in the fiber when it is cooked, and that mechanically ground wood pulp, besides the fibers, includes all that there is in the wood, there being more lignin in ground wood than in the sulphite. The witness was also of the opinion that the wood pulp in question could not be used in its imported condition in the same manner as chemically ground wood pulp.

The paragraphs of the Tariff Act of 1930 at issue in this case provide as follows:

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

TITLE II—FREE LIST

PAR. 1716. Mechanically ground wood pulp, chemical wood pulp, unbleached or bleached.

PAR. 1750. Rag pulp; paper stock, crude, of every description, including all grasses, fibers, rags, waste (including jute, hemp, and flax waste), shavings, clippings, old paper, rope ends, waste rope, and waste bagging, and all other waste not specially provided for, including old gunny cloth, and old gunny bags, used chiefly for paper making, and no longer suitable for bags.

· The issue here is whether or not the wood pulp in question, which is a combination of duty-free mechanically ground wood pulp and duty-free chemically produced wood pulp, is also entitled to free entry, even though it is produced by means of a manufacturing process, which was agreed to between counsel. The Government chemist's description of the product as a 50–50 combination of chemical pulp (unbleached sulfite fibers) and mechanically ground wood pulp is also agreed as being correct.

"Wood pulp" is defined in the Dictionary of Tariff Information, 1924, in part as follows:

**WOOD PULP** *is a mass of fibers*, either nearly pure cellulose, as in chemical pulp, or mixed with other constituents, as in mechanically ground wood pulp. The latter is obtained by grinding wood in water on a grindstone. It is inferior in quality to the chemical wood pulp, since other constituents of the wood remain as impurities. It is only about 55 per cent cellulose. Because of this fact and because the fibers are too short and stiff to felt together properly, it can not be used alone in paper making. It must be employed in conjunction with some other form of pulp, usually chemical wood pulp. Chemical wood pulp is pure or nearly pure cellulose obtained by "cooking" small chips of wood in some chemical solution until the pitch, resin, and other impurities are dissolved. There are three kinds of chemical wood pulp—sulphite, soda, and sulphate—the sulphite being the most important commercially. The *fibers of cellulose* obtained by any of the three chemical processes are of greater length and more pliant than those secured by the grinding process.

\*         \*         \*         \*         \*         \*         \*         \*

By far the greater use of wood pulp is as a raw material for paper.  \*  \*  \* [Italics supplied.]

· The same dictionary defines "paper stock" in part as follows:

**Paper Stock** in tariff usage comprises "all grasses, fibers, rags, waste, including jute, hemp, and flax waste, shavings, clippings, old paper, rope ends, waste rope, and waste bagging, and all other waste not specially provided for, including old gunny cloth, and old gunny bags, used chiefly for paper making, no longer suitable for bags." \* \* \*

\* \* \* "Fibers" is a general term applicable to anything of a fibrous texture. It should be emphasized, however, that, except for some asbestos and negligible quantities of other fibers, only vegetable fibers are used. Rags enter into almost all kinds of paper except newsprint, wrapping, and hanging paper \* \* \*. Old rags of light color which have been carefully sorted and cleaned are much employed in making writing paper, book paper, tissue paper, and all sorts of specialties. \* \* \* Waste of jute, hemp, and flax and waste bagging and gunny cloth are often employed to make a heavy, strong paper; for instance, manila wrapping paper. Old paper enters into paper of many kinds, 90 per cent of paper boards being made of that material. A good deal enters into building papers and felts and cheap wrapping paper. Waste paper is consumed, usually in small proportion, in making book paper and other papers of relatively high quality. Considerable quantities of straw go into the manufacture of paper board, and also to some extent into making certain kinds of paper. \* \* \*

\* \* \* Paper stock is either a waste product or a byproduct, except in certain minor instances.

Considering first the provision for wood pulp in the duty-free paragraph 1716, it will be noted that it specifies by name only two kinds of wood pulp, the mechanically ground and the chemical, and further specifies that it applies to either the bleached or unbleached wood pulp. If Congress had intended to include in the paragraph a combination of the mechanical and the chemical wood pulp it could, and no doubt would, have so provided. Inasmuch as no such provision is made, the claim under paragraph 1716 is overruled.

The question remaining is whether or not the imported merchandise is free of duty as paper stock. The Government's witnesses testified that the term "paper stock" included all old papers and that it meant old papers. One witness excluded rags, old gunny sacks, waste rope, waste bagging, and grasses of any type from the term "paper stock." The second witness excluded waste rope and waste bagging, burlap bagging, and gunny bagging from the term "paper stock." The plaintiff's witness, on the other hand, testified that there was little doubt in his mind that paper stock meant fiber stock suitable for the manufacture of paper. The paper-stock paragraph, which specifically states what the term "paper stock" should include, leaves little doubt that Government witnesses were not familiar with its terms.

Plaintiff's witness also testified that wood pulp was nothing more than crude fibers of wood, that is, solely vegetable fiber, which he defined from the paper-making viewpoint as a small cell, discernible with the naked eye, from either wood, rags, or grasses.

On that subject, the Government witnesses testified that the term "fibers," in its common meaning, would apply to wood pulp as wood pulp consists of fibers, and that it could include mechanically ground and chemically ground wood pulp. It thus appears that all of the witnesses are agreed that the imported merchandise, although a wood pulp, comes within the definition of fibers for paper making.

Paragraph 1750, *supra*, describes what products are within the term "paper stock, crude." It includes all grasses, fibers, rags, jute, hemp, and flax waste, and practically all of the products which the Government witnesses testified the term did not include. The Dictionary of Tariff Information, *supra*, also definitely states what is included within the term, including fibers, which applies to anything of a fibrous texture, but it generally restricts the term to vegetable fibers. That dictionary defines "wood pulp" as a mass of fibers and describes it as a raw material for paper.

In the pending case, the evidence fully establishes that the wood pulp at issue is nothing more than fibers of wood and that its use is in the making of paper. Inasmuch as paper stock, crude, is defined in the paragraph itself to include "all * * * fibers" it would include wood pulp used for the making of paper. As paragraph 1716 provides for wood pulp only when mechanically ground or when

chemically produced, of course, the instant merchandise would be excluded from paragraph 1716, but such mixture of the two, not elsewhere provided for, would clearly come within the provisions of paragraph 1750. As counsel for the plaintiff so aptly stated in their brief:

Congressional intent to provide for the duty-free admission of the raw stock of paper is amply demonstrated by the inclusive enumeration of the fibrous components of paper which are set forth in paragraphs 1716 and 1750 of the free list. * * *

The principal considerations motivating the Congressional policy of encouraging the cheap importation of wood pulp and other raw materials of paper by exempting them from duty have been the conservation of domestic forest reserves and the heavy reliance which domestic mills, particularly non-integrated mills, place on imported pulp and other paper stock.

* * * * * * *

Clearly, the imposition of a duty on this merchandise defeats the intent of Congress in that it would set up an unjustifiable exception to the uniform policy set forth in paragraphs 1716 and 1750 to admit duty-free wood pulp of all kinds, and all of the fibrous raw materials used in paper making. * * *

In view of the uncontradicted evidence before us that the wood pulp in question is nothing more than wood fibers as they come from the tree, and that the use thereof is in the making of paper, we hold that it is properly entitled to entry free of duty under the provisions of paragraph 1750, as claimed.

Judgment will therefore be entered in favor of the plaintiff directing the collector to reliquidate the entry and refund all duties taken upon said wood pulp.